UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BILLY JOE TRULY, | ) | |
| Petitioner | ) ) ) | |
| v. | ) ) | No. 06-CV-6952 |
| EDDIE JONES, | ) ) | |
| Respondent. | ) ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Court Judge:

Petitioner Billy Joe Truly, a prisoner at the Pontiac Correctional Center, now petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We deny the petition.

## BACKGROUND

On November 3, 1995, Truly was convicted on two counts of first-degree murder for beating Jarvanley Johnson and Paul Lowe to death with a pole on August 8, 1992. Following his conviction, Truly was sentenced to life imprisonment.

Truly did not confess to the murders, but an eyewitness, Antoinette Bell, identified Truly – in a photo lineup four months after the murders, during an in-person lineup thirteen months after the murders, and at trial – as the person who beat Johnson and Lowe to death. (Petition at A-2-3.) A second person, Beverly Fowler, also identified Truly in an in-person lineup as the man to whom Johnson had attempted to apologize for an incident earlier that evening. *People v. Truly*, 741 N.E.2d 1115, 1118-20 (Ill. App. 1st Dist. 2000). The State alleged that incident precipitated the fatal attack. *Id.*

1

After the trial court denied Truly's motion for a new trial, he filed a direct appeal with the Illinois Appellate Court for the First District, claiming that: 1) the trial court erred in admitting Bell's in-person lineup identification; 2) the trial court improperly admitted hearsay testimony; and 3) he was not proved guilty beyond a reasonable doubt. *People v. Truly*, No. 01-96-1705 (Ill. App. 1st Dist. 1998) (Ex. A to Answer). The appellate court denied Truly's appeal on February 17, 1998. *Id.* Truly filed a petition for leave to appeal before the Illinois Supreme Court, challenging the trial court's decision to admit the lineup identification. (Ex. C to Answer.) The Illinois Supreme Court denied that petition on June 3, 1999. (*Id.*) Truly then filed a post-conviction petition with the Illinois Circuit Court of Cook County, which that court denied in December 2000 without ordering an evidentiary hearing. (Petition at A-6.)

Truly appealed the post-conviction petition denial, arguing: 1) denial of his Sixth Amendment right to cross-examine Bell regarding her alleged motive, interest, or bias in testifying; 2) denial of his right to counsel at his lineup; and 3) ineffective assistance of appellate counsel. (Answer at 5.) The Illinois Appellate Court for the First District affirmed with respect to the latter two arguments, but remanded for an evidentiary hearing the issue of the limitations placed on Truly's ability to cross-examine Bell at trial. *See People v. Truly*, 741 N.E.2d 1115, 1131 (Ill. App. 1st Dist. 2000). Following an evidentiary hearing, the circuit court found that any restrictions on Truly's ability to cross-examine Bell were harmless beyond a reasonable doubt. (*See* Ex. G to Answer, App. Ct. 2005 Decision.)

Truly appealed again to the appellate court, arguing: 1) the post-conviction court erred in denying him relief following the evidentiary hearing; 2) ineffective assistance of post-conviction counsel during the evidentiary hearing; and 3) ineffective assistance of post-conviction appellate

2

counsel. (*Id.*) The appellate court affirmed the circuit court decision in December 2005, and the Illinois Supreme Court denied Truly's petition for leave to appeal – based on the same arguments – on May 24, 2006.

On December 27, 2006, Truly filed this petition for writ of habeas corpus, directed at Eddie Jones, the Warden of the Pontiac Correctional Center. Here, Truly advances six grounds for relief:

1) Truly was denied his right to cross-examine Bell when the trial court precluded cross-examination on the issue of Bell's bias, interest, or motive, and specifically whether Bell was promised any incentives by the State in exchange for her testimony (Petition at 1);

2) Post-conviction counsel provided unreasonable assistance at the post-conviction, post-direct appeal evidentiary hearing by failing to confront the trial prosecutor, State's Attorney Peter Petraikas, regarding incentives the State used to entice Bell to testify against Truly at trial (*id.* at B-1);

3) Post-conviction counsel provided unreasonable assistance during Truly's post-conviction appeal by failing to argue that Truly was denied his constitutional right to a fair and impartial jury when the court denied defense counsel's request to question a juror about gang bias (*id.* at C-1);

4) Post-conviction counsel provided unreasonable assistance when, after Truly raised the issue in his initial *pro se* post-conviction petition, post-conviction appellate counsel failed to challenge the trial court's questioning of twenty potential jurors (six of whom served on the trial jury) outside of Truly's presence (*id.* at D-3);

5) Post-conviction appellate counsel provided unreasonable assistance by failing to argue that the trial court erred by allowing Truly's trial counsel to represent him in arguing Truly's motion for a new trial without first inquiring into potential conflict, even though Truly's motion included an ineffective assistance of trial counsel argument (*id.* at 1-E); and

6) Denial of his constitutional right to a fair trial and due process when the trial court allowed the State to introduce evidence of Bell's in-person lineup identification of Truly. (*Id.* at 1-F.)[1]

---

[1] Truly also raised two new arguments in his responsive briefing – that he was not allowed to voir dire the jury about gang bias, and that he was not present during portions of voir dire. (Response at C-1 & C-3.) We do not consider these claims, however, since Truly

3

## ANALYSIS

**I. Standard of Review**

Since the 1996 effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, we must in our consideration of a petition for writ of habeas corpus seek to avoid "retrials" of state court proceedings and to "ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). To grant habeas corpus relief, we must find that the state court's decision has acted "contrary to" or unreasonably applied, "clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254; *see also Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2003). A state court decision is "contrary to" clearly established federal law if the state court confronted facts that are "materially indistinguishable from a relevant Supreme Court precedent and arrive[d] at a result opposite to [the Supreme Court's result." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Further, state court factual findings are "presumed to be correct" on habeas review. 28 U.S.C. § 2254(e)(1). A state court decision is an "unreasonable application" of clearly established law only if the decision is "objectively unreasonable," not merely "incorrect." *Id.* at 410. As both the "contrary to" and "unreasonable application" inquiries imply, our review here is confined to Truly's rights provided by *federal* law. *See Coleman v. Thompson*, 501 U.S. 722, 730 (1991).

**II. Ground One: Denial of Due Process Through Restrictions on Cross-Examination**

Truly's first contention is that he was denied his right to cross-examine Antoinette Bell

---

referenced them only as ineffective assistance of post-conviction counsel challenges – and not as stand alone claims – in his state court proceedings. *See, e.g.*, *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (petitioners must fairly present federal claims in state court before seeking habeas review).

4

regarding her potential bias, motive, or interest in testifying at his trial. Truly contends that he presented evidence at his post-conviction evidentiary hearing that was sufficient to support the inference that Bell was provided or promised benefits – including relocation money and a plane ticket to Atlanta, Georgia – in exchange for her trial testimony. Truly argues it was "manifestly erroneous" for the state appellate court to conclude that the trial court's decision to preclude cross-examination on that topic was not an error that might reasonably have changed the outcome of Truly's trial. Truly also claims error related to the trial court's decisions to preclude cross-examination regarding Bell's criminal record and her return to the neighborhood where the crime took place.

    *a.*    *Plane Tickets and Other Incentives to Testify*

After the Illinois appellate court partially reversed and remanded the circuit court's initial denial of Truly's state post-conviction petition, the circuit court held an evidentiary hearing to determine if any agreement or promise existed between Bell and the State to provide Bell with relocation assistance, monetary benefits, or any other benefits in exchange for her testimony against Truly. (Ex. G to Answer, Dec. 9, 2005 Ill. App. Decision.) The circuit court found no evidence of any agreement or promise between Bell and the State in exchange for her testimony. (*Id.* at 2.) The circuit court specifically found no evidence sufficient to conclude that Bell was promised a plane ticket to Atlanta or expected to receive such a ticket. (*Id.*) The court found that while Bell discussed the plane ticket with prosecutors, she was eventually told the State "could not do it," and that the relocation form indicating that the discussion took place was itself cancelled before any ticket was purchased. (*Id.*) The same relocation form indicated that a request for $350 for shelter and housing was initially submitted but also cancelled. (*Id.* at 4.) Further, an Assistant State's

5

Attorney testified at the evidentiary hearing that the State did not promise either the plane ticket or the $350 to Bell in exchange for her testimony. (*Id.*) The post-conviction circuit court therefore held, and the Illinois appellate court affirmed, that any restrictions on Truly's ability to cross-examine Bell on these subjects were harmless beyond a reasonable doubt. (*See id.* at 5-7.)

Truly has not shown that the Illinois court holdings were either contrary to or unreasonable applications of federal law. While the Sixth Amendment provides an accused the right to cross-examine a witness regarding her motivation for testifying, *Greene v. McElroy,* 360 U.S. 474, 496 (1959), trial court judges "retain wide latitude insofar as confrontation clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). This is because "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original).

Given the state courts' factual findings that the State did not give or promise to give Bell plane tickets, cash, or other benefits in exchange for her testimony – which we will not disturb, 28 U.S.C. § 2254(e)(1) – we find that the Illinois courts' conclusions regarding the trial court limitations of cross-examination on these subjects were not contrary to or an unreasonable application of federal law. The Illinois appellate court identified the proper standard (*See* Ex. G. to Answer at 7-8), and its application of that standard lay well within the "boundaries of permissible differences of opinion." *Williams*, 529 U.S. at 411. It was not an unreasonable application of federal law to hold that cross-examination on the subjects of plane tickets, cash, and other benefits

would produce marginally relevant benefits given the lack of evidence that these benefits were promised to Bell in exchange for her testimony.

  *b.*  *Bell's Criminal Record*

Truly also challenges the Illinois appellate court's denial of his contention that his Due Process Rights were violated when the trial court precluded cross-examination regarding Bell's criminal record.[2] Truly contends that such examination also would have demonstrated Bell's motive to testify against Truly in exchange for relief from pending criminal charges (three misdemeanors). Again, the Illinois appellate court properly identified both the Sixth Amendment right to cross-examine witnesses and the limitations that may be placed on the exercise of that right (Ex. G at 8), and reasonably applied the law to the factual record before it.

The Illinois appellate court reviewed the evidentiary hearing testimony of Bell, in which she stated that she never requested that the State dismiss pending charges against her in exchange for her testimony and that the no representative of the State ever promised leniency in exchange for her testimony. (*Id.* at 9.) Further, the appellate court found that Bell was not charged with any of the misdemeanors at issue until *after* she first identified Truly in a lineup and until after Bell was first disclosed to the defense as a potential trial witness. (*Id.*) Given these findings, it was not objectively unreasonable to conclude that cross-examination on these topics would have been of little marginal relevance to the issue of Bell's motive, interest, or bias in testifying against Truly. *See Williams*, 529 U.S. at 411. Therefore, we do not disturb the Illinois appellate court's holding

---

  [2]  Truly also challenged the trial court's preclusion of cross-examination regarding Bell's alleged occupation as a prostitute. (Petition at A-16.) However, Truly failed to raise this challenge in his state post-conviction proceedings; therefore, this issue is procedurally defaulted and we are not able to consider it here. *See Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993).

that the restrictions on cross-examination with respect to this issue were harmless beyond a reasonable doubt.

   *c.*  *Bell's Return to the Area of the Crime*

  Truly also contends it was error to limit cross-examination regarding Bell's "continued contact with the neighborhood where the crimes occurred." (Petition at A-16.) Truly argues that this testimony, if elicited, would have undermined Bell's credibility and specifically rebutted Bell's contention that she was fearful to return to her neighborhood. (*Id.*) This challenge was another subject of the evidentiary hearing regarding Bell's possible bias, motive, or interest in testifying. After that hearing, the Illinois courts concluded that the evidence did not show how close Bell lived to the crime scene and that the evidence did not rebut Bell's testimony that she was fearful to return to the neighborhood. (Ex. G to Answer at 11.) The only evidence regarding Bell's presence near the neighborhood of the crime showed that she lived five blocks from the crime scene between the time of the crime and the trial and that she was once arrested a mile from the crime scene. (*Id*.) It was not objectively unreasonable to conclude that cross-examination regarding Bell's presence near the crime scene would have been of little marginal relevance or impeachment value. *See Williams*, 529 U.S. at 411. We reject this ground of Truly's petition.

**III.** **Grounds Two-Five: Unreasonable Assistance of Post-Conviction Counsel**

  Truly's second, third, fourth, and fifth grounds in support of his claim state that he received "unreasonable assistance" from his post-conviction counsel at his post-remand evidentiary hearing and post-conviction appeal. (Petition at B-1, C-1, D-3, 1-E, and 1-F.) These claims – which are grounded in a right provided by the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-4 (2002), not the United States Constitution – are not cognizable in federal habeas proceedings. The AEDPA

explicitly mandates that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief" in a § 2254 habeas proceeding. 28 U.S.C. § 2254(i); *see also Johnson v. McBride*, 381 F.3d 587, 590 (7th Cir. 2004) ("neither the sixth amendment nor federal law guarantees effective assistance of counsel for collateral proceedings. . .") (citing 28 U.S.C. § 2254(i)). Accordingly, we reject these grounds for relief.

## IV. Ground Six: Denial of Due Process and Fair Trial Resulting from Admission of Lineup Identification at Trial

Truly last contends that the trial court violated his due process and fair trial rights when the court allowed the State to introduce evidence at trial that Bell identified Truly in an in-person lineup. (Petition at 6.) Truly argues that the lineup was unduly suggestive, because – after Truly threatened to disrupt the lineup by diving under a table in the room – police officers stood on both sides of Truly and restrained him during the identification process. (*Id.* at 1-F.) Jones responds that the Illinois courts' finding that Truly invited any error in the identification process was an independent and adequate state law procedural default, and alternatively that the Illinois courts were not objectively unreasonable in admitting the lineup evidence. (Answer at 30.)

The Illinois appellate court reviewed the facts of Truly's lineup within the court's opinion on Truly's direct appeal. (Ex. A to Answer at 5-7.) In December 1992, Bell identified Truly in a photo array as the person who beat Jarvanley Johnson to death with a pole. (*Id.* at 4.) Bell – along with another witness, Beverly Fowler – returned to the police station in September 1993 to view a live lineup. (*Id.*)

Both "prior to and during" the live lineup, Truly told detectives he "planned to disrupt the lineup." (*Id.* at 5.) In response to this threat, three Chicago Police Department detectives "stood

9

staggered behind the lineup participants." (*Id.*) After Truly tried to slide under a table in the lineup room, two of the detectives restrained Truly by holding onto his arms. (*Id.* at 6.) Detectives similarly restrained the other lineup participants. (*Id.*) Bell again identified Truly as the attacker. (*Id.*) In a separate lineup, which Truly did not attempt to disrupt and during which he was not restrained, Fowler identified Truly as the man to whom one of the victims had tried to apologize for the incident that allegedly precipitated the attacks. (*Id.*)

After initially suppressing the lineup evidence, the trial court found that the suggestiveness of the lineup – the presence of the detectives holding Truly and the other participants – was the result of Truly's own conduct. (*Id.* at 7.) The trial court therefore reversed course and allowed the State to use the lineup identification at trial. (*Id.*) The appellate court affirmed, finding that "the defendant was responsible for any suggestiveness at his first lineup" and that the police detectives "acted in good faith in conducting the lineup and mitigating defendant's disruptive behavior." (*Id.* at 8-9.) Accordingly, the appellate court held, Truly "cannot now challenge this lineup because of his own improper conduct." (*Id.* at 9.) The Illinois appellate court relied on *People v. Yates*, 456 N.E.2d 1369, 1380 (Ill. 1983), in which the Illinois Supreme Court rejected an appellant's challenge of a suggestive lineup identification in light of the appellant's own disruptive behavior before and during the lineup. The *Yates* court reasoned that it would "be little short of ridiculous to hold that because defendant's misconduct during a lineup focused attention upon him, the integrity of a subsequent in-court identification was impaired where that in-court identification would otherwise be satisfactory." *Id.* Relying on this and a subsequent Illinois appellate decision, the appellate court here denied Truly's challenge to the trial use of his lineup identification. (Ex. A to Answer at 9.)

The State contends that the Illinois appellate court applied the "invited error" doctrine to dispose of Truly's lineup challenge, and that application was an independent and adequate procedural decision that now serves to default Truly's challenge in this petition. As the Seventh Circuit has recognized, applications of the Illinois "invited error" doctrine may constitute grounds for procedural default of a federal habeas corpus petition. *See Coleman v. O'Leary*, 845 F.2d 696, 699-700 (7th Cir. 1988). *Coleman* involved a rape case in which the petitioner's trial lawyer affirmatively prevented a secretor test which the petitioner later claimed would prove his innocence. *Id.* The Illinois courts found that Coleman and his lawyer failed to take any actions to protect their rights, and had invited any error they later challenged; the federal district court denied Coleman's habeas petition on procedural default grounds and the Seventh Circuit affirmed. *Id.* at 701. The *Coleman* court explained, "[i]t is a well-settled principle of law that a party will not be allowed to take advantage of his own wrong or of an error of the court induced by his motion." *Id.* (quotations and citations omitted). However, the *Coleman* decision rested on analysis of precedent involving errors by defense counsel *at trial and formal pre-trial proceedings*. *Id.* There are certainly parallels between the reasoning in *Yates* and the invited-error doctrine discussed in *Coleman*. *See id.* at 698 (quoting Illinois court statement that "were we to consider the denial of defendant's second request for testing to be error, which we do not, it was clearly invited by the conduct of defendant and his counsel and may not be relied upon by him on review."). But neither the *Yates* court nor the appellate court here explicitly stated they were applying the invited-error doctrine.

Lineup identifications should be excluded only if the identification procedure was unnecessarily suggestive and the witness' identification in unreliable. *Manson v. Brathwaite*, 432 U.S. 98, 113-14 (1977). We read the *Yates* reasoning as a substantive application of the two-prong

11

*Manson* test, not a procedural rejection of a defendant's challenge. The *Yates* court decided that the in-court identification the defendant challenged (based on the alleged defects in the witness' earlier lineup identification) was otherwise reliable and that any suggestiveness was not unnecessary or impermissible given the defendant's conduct:

> It would, however, be little short of ridiculous to hold that because defendant's misconduct during a lineup focused attention upon him, the integrity of a subsequent in-court identification was impaired where that in-court identification would otherwise be satisfactory. One of the principal reasons for lineups is to protect suspects from misidentification and promote the early release of innocent persons. Where, as here, the record shows that the witnesses had an adequate opportunity to observe defendant on the morning of the murder and make a positive in-court identification, the defendant will not be permitted to challenge its sufficiency because of his own misbehavior.

*Id.* at 1380. The Illinois appellate court acted similarly in evaluating Truly's appeal; the court found both that Truly was "responsible for any suggestiveness at his first lineup," and that "Bell's identification of the defendant was reliable and properly introduced into evidence." (Ex. A at 8-9.) Rather than giving these decisions the effect of a procedural default, we will evaluate them for their objective reasonableness.

We find that the Illinois courts did not act contrary to or unreasonably apply clearly established federal law in concluding it was proper to admit Bell's in-person lineup identification. Accepting state court findings of fact as true, 28 U.S.C. § 2254(e)(1), the following facts make clear that the Illinois courts acted reasonably in rejecting this ground of Truly's appeal:

1) Bell witnessed the attacks while standing on a porch near the scene of the crime, aided by lights from a nearby alley and her apartment building;

2) Bell identified Truly in a separate photo array nine months before the in-person lineup;

12

3) Bell again identified Truly at trial;

4) All of the other lineup participants were restrained by other detectives in an effort to make the lineup as neutral as possible;

5) A few hours after Bell identified Truly, Beverly Fowler – another witness to the crime – identified Truly in a separate lineup in which Truly was not restrained; and

6) Truly told officers he would disrupt the lineup and did in fact attempt to disrupt the lineup.

(Ex. A at 4-10.) The first five factors are relevant to the reliability of Bell's identification; the last indicates that any suggestiveness in Truly's in-person lineup was not unnecessary or impermissible, but the direct result of Truly's own conduct. We find that given these facts, the Illinois courts did not act unreasonably in applying either prong of the *Manson* test: any suggestiveness was made necessary by Truly's own behavior, and one could reasonably conclude that Bell's identification was reliable. Therefore, we deny Truly's sixth claim in support of his petition for writ of habeas corpus.

## CONCLUSION

For the reasons stated above, we deny Billy Joe Truly's petition for writ of habeas corpus. It is so ordered.

*[signature]*

MARVIN E. ASPEN
United States District Judge

Dated: 6/5/07